UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN BRANCH AT LONDON
CASE #6:12-CR-15-01-GFVT

UNITED STATES OF AMERICA                                              PLAINTIFF

v.

DAVID JASON JENKINS                                                   DEFENDANT

## SENTENCING MEMORANDUM

Comes now the Defendant, by and through counsel, with heavy heart and some degree of trepidation and concern, and files herewith his sentencing memorandum in support of various and sundry objections to specific portions of the Presentence Investigation Report; and as to some generalized concerns about this case and the potential sentencing of this particular defendant.

Both defendants, David Jason Jenkins and Anthony Ray Jenkins, filed objections to their respective assessments of "causing serious bodily harm" to Kevin Pennington which resulted in an additional assessment of two points, and secondly, for the alleged use of an expansive definition of "dangerous weapon" as adopted by the United States Probation Officer at the urging of the United States government, for an additional assessment of two points.

Counsel would incorporate by reference the arguments of Anthony Jenkins as to the legalistic positions concerning the injuries purportedly suffered by Kevin Pennington and the expansive definition which both defendants find objectionable to the use of one party of boots to create whatever injury was occasioned upon Mr. Pennington.   Thus, counsel would adopt both co-defendant's position and the prior objection as stated to the probation officer by letter.

## RESPONSE TO AMENDED PRESENTENCE INVESTIGATION REPORT CONCERNING OBSTRUCTION OF JUSTICE

At the United States' urging, after the disclosure of the original report, the probation office imposed a 2-point enhancement for obstruction of justice. The USPO set forth its belief concurrent with that of the United States that David Jenkins' behavior concerning his wife Connie's trip to the Grand Jury in London was obstructive and therefore imposed two points.

The government has used the January 25, 2012 Grand Jury testimony of Connie Jenkins; the the March 25 Grand Jury testimony of Connie Jenkins; and the testimony of Joyce Hoskins of April 11, 2012 to bolster its position that David Jenkins' behavior was obstructive.

In the original deposition of Connie Jenkins, the only reference to potentially obstructive behavior occurred at page 36, line 6, when the United States asked: "Okay, and is he aware that you are going to testify?" to which Connie responded, "He don't really know what I am doing here." There are no other statements relative therein.

Later, in what Jason Jenkins believes is the most dispositive testimony concerning this issue it is indicated that after David's arrest, Joyce Hoskins stated that Connie "… couldn't go to the store without him" (Page 5, Line 10). Further, on the car ride on which the United States now seeks to impose its obstructive behavior adjustment, the sister, Joyce Hoskins says specifically at page 6, line 2, "the only thing brought up that she was hollering 'I'm nervous.' Well, he bitched at her." Then, at line 9, she goes on to say, "…he'd bitch at her and tell her to shut up and it wasn't nothing but a drug deal gone bad. Now that was all that was said in the car."

When pressed, Ms. Hoskins was asked at page 7, line 7, "Did Jason say anything you can remember as you were getting out of the car?" Answer: "No, not that I know of now he didn't."

Finally, in summation, at page 11, Joyce says, "he just told Connie to calm down and quit being so damn nervous…"

In the interim time, at some point of time unknown between the first Connie deposition and the Joyce Hoskins deposition, Connie was called back to testify and additional questions were asked concerning whether or not there was conversation in the car directing Connie's testimony to a specific subject, i.e., was it a drug deal gone bad or did it involve attack of a homosexual? At page 8, Connie then remembered Jason saying, "Well, you're not fucking testifying." Connie goes on to say that Jason should not have come with her but he did, because "she was afraid." At page 9, she alleges that Jason said, "You don't have to talk about that faggot…it's over a drug deal, it's not the faggot."

While clearly Connie testified that she was scared, she testified just as clearly about her subsequent conversation with Agent Sanke and expanded her testimony dramatically. However, Connie's recollection in the March 22 Grand Jury appearance is markedly different than that as testified to by Joyce Hoskins.

While the probation officer concludes that when agents came to serve her with the Grand Jury that Jason told her not to answer the door, he allegedly stated "you're not fucking testifying," There is no illegal act, though perhaps a violation of bond, that Jason went with them. The more truthful recitation of that event is contained in Joyce Hoskins' testimony.

Despite the application note in 3C1.1, Jason Jenkins is never alleged to have suggested or directed the witness to suborn perjury. While Jason may have been generally threatening to Connie in his life, it does not rise to that which would be unlawfully influencing a co-defendant witness or juror, either directly or indirectly.

3

While Jason Jenkins may not win any prizes as a husband, he was only acting in a way that was consistent with how he acts at all other times. It is respectfully submitted, therefore, that the behavior as alleged by the government does not amount to obstructive behavior and therefore the adjustment in the revised report should be overruled.

## **GENERALIZED CONCERNS AND THOUGHTS**

Undersigned counsel has had great difficulty in envisioning and carrying out the appropriate way to object to the characterization of this criminal offense as a hate crime or even as a kidnapping worthy of the type of sentence contemplated by the guideline calculations, either with or without the four- or six-point enhancements as now sought to be applied by the government and the probation office.

Counsel is acutely aware that this case arose as a "hate crime" in theory by the United States, attempting for the first time nationwide to prosecute what is otherwise a fairly common, run-of-the-mill assault from a state court case into a federal charge that was ultimately rejected by the jury, that is, a hate crime. It is undeniable that the original offense was prosecuted in state court as an attempted murder and that the defendant, David Jason Jenkins, was offered upon a plea a twenty-year sentence, which was then rendered null and void by the presentation of this case to a federal Grand Jury as a hate crime.

It is an inescapable conclusion that the use and abuse of narcotics by known drug dealers and drug users and drug abusers is inextricably interwoven with this case. Whether the United States failed to appropriately investigate its victim to ascertain whether he was anything other than simply a victim of an alleged hate crime or not, the jury chose to believe that the kidnapping did occur. However, the jury's verdict indicates that the act did not occur as a result of the

4

Defendant's perceived belief of the alleged victim's sexual orientation, but that the event at some point during the trip to the mountain became more than a drug deal and became a kidnapping.

Drug use and abuse by all the participants is rampant in this case, with the exception of Anthony Jenkins. Kevin Pennington is a drug dealer, a drug user and a professional victim. Kevin Pennington cried foul when he did not believe he was receiving the attention he felt he deserved from the Harlan County Commonwealth Attorney's Office; despite the fact that Jason Jenkins was offered a plea deal based not only on the purported significance of this offense but also based on his criminal history as well, of twenty years.

There is no dispute that drugs were at the heart of the activities that occurred that evening. Further, there is no dispute that prior to everyone gathering at the home that evening that there had been no prior discussion of any type of unlawful event as against Kevin Pennington before the evening in question. Lastly, there is no dispute that David Jason Jenkins was high on a multiple variety of illegally obtained pills as well as a tremendous volume of alcohol.

When assessing a sentence which is sufficient but not greater than that which is necessary to conform to the dictates of 18 U.S.C. §3553(a), the Court is required to look at a number of factors, all of which will be discussed herein, and then fashion such an important sentence using the purported guidelines.

The Court herein has had the benefit of a very long, difficult, emotional trial where the Court had the opportunity to gauge as well the credibility of the witnesses who testified against these two Defendants. The Court saw a family member fraught with fear, concern and loyalty to his family go to jail because he did not want to testify. The Court saw a small community torn asunder as a family watched two young women, one young man and an older gentleman going to

5

prison in a climate filled with drug abuse, loose sexual morals and a constant, never-ending need to fulfill a longstanding drug habit in the community.

The Court is urged to look at this case at its barest to determine that, as a substantial matter, a sentence outside the guidelines, subject to a variance, is appropriate given the circumstances and legal factors which the Court must consider in fashioning this sentence.

Everyone involved in this case, including the victim, thought that the origination of the idea was to get Suboxone because everyone except Anthony was addicted to Suboxone and every other drug that they could get their hands on. At some point Jason "went redneck" as a result of both alcohol and drug intoxication when the purported seller of the Suboxone was a person thought to be a snitch, and Anthony followed right behind. The girls, entering pleas of guilty to a hate crime, now claim that it was all because of the perceived sexual orientation of the victim, but the jury didn't buy it. The nature and circumstances of this case as assaultive behavior that may be could sustain a state court verdict of assault in the second degree, which is a five to ten year felony but could also sustain a Class "A" misdemeanor of up to 12 months.

Kidnapping, as found by the jury, subjects these two gentlemen to a higher sentence than a Class "C" state crime of assault. Can it truly be said that a sentence within a guideline range is appropriate for this behavior with these drug dealers, with these drug traffickers, with a victim who candidly and resolutely admitted that he had bought, sold, trafficked and done drugs his whole life whenever he had the money?

David Jason Jenkins acknowledges that, in review of his life, the difficulties he has had himself with others and with the law are significant. David Jason Jenkins is as addicted to everything he can get his hands on as anyone that undersigned counsel has represented. Is a

6

twelve year sentence fair for someone like this? Maybe. But is a sentence at a level 38 for this behavior appropriate? This defendant urges the Court not.

The other factors, which generally are always considered, but generally given lesser consideration are the need for deterrence, the need to protect the public, and the need to ensure that actions of this kind will not occur by this particular defendant. David Jason Jenkins is going to federal prison. It is believed the Bureau of Federal Prisons, in its wisdom, will not treat him kindly. It is believed that a sentence of between ten and twelve years will sufficiently deter further criminal behavior and will protect the public, and will further offer a message to small town communities not only that assaultive behavior, but drug-addicted directed behavior cannot be tolerated. As the Court well knows, a sentence will be served at 85%, and thus a strong deterrent message will be sent. There will be no parole for Jason Jenkins.

The jury determined that this was a serious kidnapping offense, and a sentence in the range believed to be appropriate by counsel promotes respect for the law and satisfies the objectives mandatorily imposed by the Congress of the United States.

Counsel appreciates the opportunity to represent those on the London CJA docket. Counsel has wrestled with his own conscience in determining in the grand scheme of those factors necessary to be considered by the sentencing court what is fair for all, given the circumstances of this case. The government called upon the wife of one defendant and cousins of the other in a very short span of time between criminal complaint and indictment to testify against family members, husbands, relatives, and friends. The victim in the case, while undoubtedly lucky to have not suffered more severely, nonetheless cannot claim to come to this matter with clean hands. Had Mr. Pennington not been a known drug dealer, he never would have gotten into the truck with the intention of sharing his illegally gotten gains with his friends.

7

Counsel believes and has believed that this case was not the case that the government was looking at or should have been looking at for assaultive behavior as a result of a perceived defendant's belief concerning a perceived victim's sexual orientation. Counsel stands on this belief and asks the Court for a sentence in the 120-144 month range, which Counsel sincerely believes satisfies the sentencing objectives that are imposed on the Court.

    Respectfully submitted,

    __/s/ Andrew M. Stephens__
    HON. ANDREW M. STEPHENS
    Attorney for Defendant
    107 Church Street, Suite 200
    Lexington, KY 40507
    Phone: 859-233-2232
    Fax: 859-254-3992

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2013, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to the parties.

    _/s/ Andrew M. Stephens_
    ANDREW M. STEPHENS